UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.  ) | **Criminal No. 04-10221-RWZ** |
| ) | |
| **NURIA SOLE,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT NURIA SOLE'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS COUNTS THREE THROUGH ELEVEN OF THE INDICTMENT AGAINST HER**

**I.   BACKGROUND**

   **A.   Facts**

On July 22, 2004, the Grand Jury returned an eleven (11) count indictment against Nuria Sole. Count One charges a conspiracy to distribute, and to possess with intent to distribute, a controlled substance (methamphetamine) during the period of time between November 2002 and October 2003. Count Two charges a conspiracy to distribute, and to possess with intent to distribute, a controlled substance (methamphetamine) during the period of time between December 2003 and February 2004. Counts Three, Four, Six, and Ten charge possession with intent to distribute gamma butyrolactone (GBL), which the Indictment alleges is a controlled substance analogue. Finally, Counts Five, Seven, Eight, Nine, and Eleven charge possession with intent to distribute 1,4 butanediol (BD), which the Indictment alleges is a controlled substance analogue.

   **B.   The controlled substance analogue statute should be read conjunctively**

A "controlled substance analogue" is a substance which is "substantially similar" to a controlled substance but is not specifically prohibited under the federal drug laws. 21 U.S.C. §

802(32)(A); see also United States v. Hodge, 321 F.3d 429, 432 (3d Cir. 2003).  The Controlled Substance Analogue Enforcement Act of 1986 (the "Analogue Act") provides that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." Hodge, 321 F.3d at 432 (quoting 21 U.S.C. § 813).

In the present case, the Government alleges that Ms. Sole participated in a conspiracy to distribute, and to possess with intent to distribute, a controlled substance.  Specifically, the Government alleges that Ms. Sole possessed with intent to distribute gamma butyrolactone ("GBL") and 1,4 butanediol ("BD").  The Indictment charges that these two substances are controlled substance analogues as defined in 21 U.S.C. § 802(32) that were intended for human consumption as stated in 21 U.S.C. § 813.  As set forth more fully below, Ms. Sole contends that neither BD nor GBL are "controlled substance analogues" because neither substance contains a chemical structure which is "substantially similar" to a controlled substance in schedule I or II (in this case, gamma-hydroxybutyric acid ("GHB")).

The statutory definition of the term "controlled substance analogue" states:

*. . . . [t]he term "controlled substance analogue" means a substance - -*

*(i)     the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;*

*(ii)    which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or*

*(iii)   with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or*

> *hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.*

There has been some dispute as to whether or not the definition of "controlled substance analogue" is to be read disjunctively or conjunctively. In other words, the Government often advocates for a disjunctive reading of the statute, arguing that a substance is a controlled substance analogue if it satisfies any one of clauses (i), (ii), or (iii) in the definition above. See, e.g., United States v. Hodge, 321 F.3d at 433; United States v. Forbes, 806 F.Supp. 232, 234 (D. Col. 1992); United States v. Vickery, 199 F. Supp. 2d 1363, 1366 (N.D. Ga. 2002); United States v. Clifford, 197 F. Supp. 2d 516, 519 (E.D. Va. 2002). On the other hand, defendants advocate for a conjunctive reading, arguing that a controlled substance analogue must satisfy both clause (i) and either clause (ii) or (iii). See id. Every federal court to consider this issue has read the statute conjunctively. See Hodge, 321 F.3d at 433. This Court should also read the statute conjunctively.

When a statute's plain meaning is ambiguous, it is necessary to consider the statute's structure and purpose in order to determine Congress' intent. See United States v. Clifford, 197 F.Supp.2d at 519. The ambiguity in the Analogue Act arises in relation to whether or not the subordinate clauses (clauses i, ii, and iii) should be read disjunctively or conjunctively. The district court in United States v. Greig concluded that because "each of the three subordinate clauses occupies the same structural position of subordination relative to the main clause, and each is separated by a semicolon, with the last two clauses being separated by the disjunctive 'or,'" the series is intended to be read disjunctively. See 144 F. Supp.2d 386, 389 (D. V.I. 2001). This conclusion has been rejected, however, because there is "no universally recognized or authoritatively stated rule of structure to the effect that a series of subordinate clauses must be read in the disjunctive if the

penultimate and final clauses are separated by 'or.'" Clifford, 197 F. Supp. 2d at 519.  The court in Clifford noted that in the very same statute (as the Analogue Act), Congress elected to follow a contrary convention – it listed a number of subordinate clauses in a fashion similar to 802(32)(A), but placed the term "or" after every subsection[1].  See id. at 519-20.

Once an ambiguity is established, the Court must then consider the statute's purpose as disclosed by the language and legislative history.  The language of the statute also compels that the Court read the statute conjunctively.  In crafting § 802(32)(A), Congress chose to use the word "analogue."  That word has a settled meaning: as defined in the scientific context, it is defined as a "'structural derivative of a parent compound that often differs from it by a single element.'" Clifford, 197 F. Supp.2d at 520.  This definition fits squarely within clause (i) of the Act, but does not mesh with clauses (ii) and (iii) (in the absence of clause (i)).  See id.  A conjunctive reading of the Act is therefore necessary in order to accurately classify a substance as a controlled substance analogue.

The legislative history also requires this Court to read the Analogue Act conjunctively, in part because a statute must be construed to avoid unintended or absurd results.  See United States v. Vickery, 199 F. Supp. 2d at 1369 (citing American Tobacco Co. v. Patterson, 456 U.S. 63, 71 (1982)).  The Controlled Substances Analogue Act was designed to "combat the problem of persons who seek to avoid the reach of federal criminal drug laws by manufacturing or distributing substances that are not listed controlled substances but which are specifically designed to provide

---

[1] A further grammatical argument that favors reading the statute conjunctively is that the operative segments of clauses (ii) and (iii) both begin with the word "which."  This signals that these clauses start dependent relative clauses which modify a precedent noun – here, that noun is "chemical structure" found in clause (i).  The fact that clauses (ii) and (iii) can both be read to modify clause (i) suggests that the statute was intended to be read conjunctively.  See Forbes, 806 F. Supp. at 235.

effects that are substantially similar to the effects of listed substances[2]." Clifford, 197 F. Supp. 2d at 521. Reading the statute in the conjunctive guarantees that the purpose of the statute is effectuated.

If the statute were read disjunctively, a substance could be a "controlled substance analogue" solely on the basis of satisfying clause (ii). This could easily lead to an absurd result, however, as Congress certainly did not intend to criminalize substances that have a stimulant, depressant, or hallucinogenic effect but are not substantially similar in chemical structure to a controlled substance. See United States v. Forbes, 806 F. Supp. at 235 (noting that a disjunctive reading of the statute could potentially produce absurd results, as alcohol or caffeine would be controlled substance analogues if the Government is not required to prove that the alleged analogue has a substantially similar chemical structure to a controlled substance). Additionally, a review of clause (iii) makes clear that the conjunctive reading is appropriate. Congress surely could not have intended to criminalize sales of legal substances simply because an individual represented that those substances would have a stimulant, depressant, or hallucinogenic effect similar to that of a controlled substance. See Clifford, 197 F.Supp.2d at 520 (noting that flour, salt, ginseng, and vitamin B could certainly not be considered "controlled substance analogues" just because a defendant represented to someone that they were an illegal substance that would have a stimulant, depressant, or hallucinogenic effect on the central nervous system); see also United States v. Hodge, 321 F.3d at 433-36 (reading the statute conjunctively and holding that a mixture of candle wax and flour, passed off by the

---

[2] The legislative history reveals that the analogue statute is "directed at underground chemists who tinker with the molecular structure of controlled substances to create new drugs that are not scheduled." Forbes, 806 F. Supp. at 236. On a factual note, Ms. Sole is not an "underground chemist" who was tinkering with substances in order to create new drugs; rather, she is an organic chemist who used both BD and GBL in her lab at work – as both are solvents that are commonly used by chemists.

defendants as "crack" cocaine, was not a controlled substance analogue merely because the defendants "represented" the mixture to be crack cocaine and therefore to have a "stimulant . . . effect on the central nervous system" "substantially similar" to a "controlled substance in schedule I or II."). This Court should therefore join every federal court to consider this issue and read the statute conjunctively.

## II.   ARGUMENT

### A.   The definition of "controlled substance analogue" is unconstitutionally vague as applied to 1,4 butanediol (BD)

As the First Circuit has held, "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." United States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)); see also United States v. Klecker, 384 F.3d 69, 71 (4th Cir. 2003) (stating that a defendant can only make a facial challenge to the constitutionality of a criminal statute when the statute implicates First Amendment rights). The void-for-vagueness doctrine "requires that penal statutes define crimes so that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged." Klecker, 348 F.3d at 71 (citing United States v. McLamb, 985 F.2d 1284, 1291 (4th Cir. 1993)). In evaluating a constitutional challenge to a statute on vagueness grounds, a court must consider both whether the statute provides notice to the public and whether the statute adequately curtails arbitrary enforcement. See Kolender v. Lawson, 461 U.S. 352, 357-58 (1983). Defendant Sole contends that the Analogue Act neither provides notice to the public nor adequately curtails arbitrary enforcement in relation to BD and GBL.

     1.     <u>The Analogue Statute does not provide adequate notice of the proscribed conduct</u>

A statute which proscribes a particular conduct in ". . . terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . ." violates due process. <u>United States v. Washam</u>, 312 F.3d 926, 929 (8th Cir. 2003) (citing <u>Connally v. Gen. Constr. Co.</u>, 269 U.S. 385, 391 (1926)). The phrase "void for vagueness" simply means that a defendant should not be found criminally responsible when he or she could not reasonably have understood that his or her conduct was prohibited. <u>See</u> <u>Washam</u>, 312 F.3d at 929 (citing <u>United States v. Nat'l Dairy Prods. Corp.</u>, 372 U.S. 29, 32-33 (1963)). It is defendant Sole's position that the Analogue Statute does not provide adequate notice that possession of BD is prohibited.

In <u>United States v. Washam</u>, the Court found that a "person of common intelligence has sufficient notice under the statute that 1,4-Butanediol is a controlled substance analogue" and therefore cannot claim that the statute is void for vagueness. <u>See</u> 312 F.3d at 930. Defendant Sole respectfully submits, however, that she is not a "person of common intelligence;" rather, she is a chemist with a PhD in organic chemistry[3]. As a chemist, Ms. Sole is aware that BD is <u>not</u> an analogue of GHB. On the contrary, Ms. Sole is aware that the chemical structures of the two substances are not analogous, their physical properties are not analogous, and the chemical reactions they undergo are not analogous. <u>See</u> attached letter of Dr. J. Thomas Ippoliti[4]. Finally, Ms. Sole is

---

[3] It is true that the inquiry into whether ordinary people can understand that conduct is prohibited does not look at what a particular defendant understood the statute to mean. <u>See</u> <u>Washam</u>, 312 F.3d at 930. However, Ms. Sole submits that as a chemist, she has a particularized knowledge that from a scientific standpoint, BD is not an analogue of GHB.

[4] Dr. Ippoliti's curriculum vitae is also attached.

aware that these three comparisons are the three primary ways a chemist defines if one compound is analogous to another.

In United States v. Orchard, the defendant offered his babysitter some of his "headache medicine" to "pick her up." See 332 F.3d 1133, 1135 (8th Cir. 2003). The medicine was BD; defendant mixed it with soda and told the babysitter to drink it. See id. at 1136. Defendant even told the babysitter that she should not drink too much of the substance because it was used for date rape. See id. Within fifteen minutes, the babysitter felt intoxicated; despite that fact (or, rather, because of it) defendant made her another drink mixed with the BD. See id. Defendant then made sexual advances on the babysitter.

The Eighth Circuit rejected defendant's argument that the Analogue Act is unconstitutionally vague as to BD. It is instructive to remember, however, that void-for-vagueness challenges to a statute are "examined in light of the facts at hand." Orchard, 332 F.3d at 1138. In Orchard, the defendant took BD – a substance he obviously thought could be "used for date rape" – and drugged his babysitter in order to make sexual advances on her. The facts of Ms. Sole's case could not be further from the facts of Orchard. Ms. Sole is an organic chemist who was employed by Applera Corporation to do peptide nucleic acid (PNA) synthesis by solid phase peptide synthesis (SPSS) using FMOC chemistry to wash dyes from resin. Ms. Sole used BD in the lab because it is such an effective solvent. Additionally, when ordering various chemicals for use in the lab, Ms. Sole had to account to the DEA as to her use for the particular chemical. BD, however, was not one of the chemicals that required an explanation – because BD is a common solvent used by chemists in labs. Clearly, the Analogue Act did not put Ms. Sole on notice that BD was a "controlled substance

analogue." This is particularly true, as explained above, given the fact that Ms. Sole knows firsthand as a chemist that BD is not an analogue of GHB.

The facts in United States v. Washam, while less disturbing than the facts in Orchard, are also clearly distinguishable from the facts presented by Ms. Sole's case. In Washam, the defendant was using and selling products containing BD while working at a nutrition store known as "Nutri-Tech." See 312 F.3d at 928. Defendant Washam researched BD and discovered that GHB was illegal; similarly, he discovered through his research that GBL was also potentially an illegal analogue of GHB[5]. See id. Defendant therefore began importing BD from Mexico in order to sell it to customers of Nutri-Tech. See id. Further, defendant admitted during a sale of BD to an undercover officer that he knew that the sale of BD for human consumption was illegal. See id.

The Eighth Circuit found that there was merit to the Government's argument that defendant Washam had actual notice that his conduct was prohibited. See id. at 930. The Court also held that all experts need not agree on whether two drugs' chemical structures are "substantially similar" in order to conclude that the Analogue Act is not void-for-vagueness. See id. at 931. The court stated that "[r]ather than unanimous expert ratification, we look to whether the statute gave adequate warning, under a specific set of facts, that the defendant's behavior was a criminal offense." Id.

In the present case, however, it is significant that the defendant is – due to her PhD in organic chemistry– an "expert" on the topic of chemical structures. Ms. Sole is therefore uniquely qualified – particularly among defendants – to know whether or not a particular substance is an analogue of another chemical substance. Ms. Sole knows that BD is not an analogue of GHB; as such, the statute

---

[5] Defendant Sole does not concede that GBL is an analogue of GHB; rather, this statement is contained in the facts of United States v. Washam and is offered only to illustrate the factual scenario facing the defendant in that case.

9

does not give adequate warning, under this specific set of facts, that any behavior allegedly engaged in by Ms. Sole violated the law. Finally, in addition to knowing that BD does not have a substantially similar chemical structure to GHB, Ms. Sole also knows that when ordering BD, she did not have to complete additional paperwork like she did for many other substances. The Analogue Statute is clearly unconstitutionally vague as applied to BD under the specific facts presented by Ms. Sole's case.

      2.      The Analogue Statute lends itself to arbitrary enforcement

The second part of the inquiry into whether or not a statute is void for vagueness requires determining whether the statute lends itself to arbitrary enforcement. See United States v. Washam, 312 F.3d at 931 (citing Kolender v. Lawson, 461 U.S. at 358). In enacting criminal statutes, Congress is required to provide minimal requirements to "guide law enforcement in order to prevent police officers, prosecutors, and juries from pursuing their 'personal predilections.'" Washam, 312 F.3d at 931. As the Supreme Court has noted, "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who should be rightfully detained . . ." United States v. Reese, 92 U.S. 214, 221 (1875).

In relation to BD, the Analogue Act has, in fact, "cast a large enough net to catch all possible offenders." As discussed more fully above, BD is a common solvent used by chemists: and it was only as a chemist that Ms. Sole had contact with BD. As noted above, the Controlled Substance Analogue Act was "designed to combat the problem of persons who seek to avoid the reach of federal criminal drug laws by manufacturing or distributing substances that are not listed controlled substances but which are specifically designed to provide effects that are substantially similar to the effects of listed substances." Clifford, 197 F. Supp. 2d at 521. The net cast by the legislature is

certainly too large if it "catches" individuals like defendant Orchard, who used BD to drug his babysitter in an attempt to commit sexual assault, while also "catching" Ms. Sole - an organic chemist with a legitimate use for BD.  The Analogue Act is therefore unconstitutionally vague as applied to the facts of Ms. Sole's case.

       **B.**      **The definition of "controlled substance analogue" is unconstitutionally vague as applied to gamma butyrolactone (GBL)**

As set forth more fully above, a court must consider, in evaluating a constitutional challenge to a statute on vagueness grounds, both whether the statute provides notice to the public and whether the statute adequately curtails arbitrary enforcement.  See Kolender v. Lawson, 461 U.S. at 357-58.  Defendant Sole contends that the Analogue Act neither provides notice to the public nor adequately curtails arbitrary enforcement in relation to BD and GBL.

       1.      <u>The Analogue Statute does not provide adequate notice of the proscribed conduct</u>

On March 13, 2000, the Drug Enforcement Administration (DEA) issued its Final Rule naming gamma-hydroxybutyrate acid (GHB) a Schedule I Controlled Substance.  See United States v. Fisher, 289 F.3d 1329, 1335 (11th Cir. 2002).  As noted by the Eleventh Circuit in Fisher, the DEA's Final Rule contained cautionary language regarding GBL[6].  Specifically, it was noted that the DEA received reports that GBL, the "solvent precursor for GHB, is being abused due to its rapid conversion to GHB soon after ingestion."  Id. at n. 8.  As a result of the warnings issued by the DEA,

---

[6] The FDA also declared that BD, a chemical it called "related to both GHB and GBL," is a Class I Health Hazard.  See United States v. Fisher, 289 F.3d at 1335.

the FDA issued a request for a voluntary recall of all GBL-containing products sold in health food stores.  See id.

On April 24, 2000, the DEA issued its Final Rule designating GBL a List I chemical.  See United States v. Fisher, 289 F.3d at 1336.  The DEA announced that GBL [7] is "structurally and pharmacologically similar to GHB and [is] often substituted for GHB . . . .[and that] under certain circumstances [GBL] may satisfy the definition of a controlled substance analogue."  Id. (emphasis added).  Ms. Sole contends that the very fact that the DEA has stated that GBL    may satisfy the definition of a controlled substance analogue under certain circumstances renders the Analogue Act void because it is unconstitutionally vague.  This is particularly true as applied to the facts of the present case.

When evaluating a claim that a statute is unconstitutionally void for vagueness, the Court must consider whether the statute is vague based on the facts of the individual case.  See United States v. Hussein, 351 F.3d at 14.  The facts of Ms. Sole's case are distinguishable from those of the defendants in United States v. Ansaldi, 372 F.3d 118 (2d Cir. 2004), where the Second Circuit found that the Analogue Act is not unconstitutionally vague with regard to GBL.  In that case, defendants were selling "Invigorating," a product whose active ingredient was GHB, over the internet.  See id. at 122.  At some point during 1999, defendants became aware that pending legislation would prohibit the sale of GHB.  See id.  "Invigorating" was therefore replaced with a new product, "Verve," which was a mixture of water, blueberry Kool-Aid, sugar, and GBL.  See id.  The court found that defendants sold Verve for human consumption and that they had knowledge that GBL converted to GHB upon ingestion.  See id.

---

[7] The DEA issued the same statement regarding BD.

In the present case, Ms. Sole also has knowledge that GBL is converted into GHB upon ingestion. The difference between Ms. Sole and the defendants in Ansaldi, however, is that Ms. Sole is an organic chemist who used GBL as a solvent while working in the lab. A more significant difference between Ms. Sole and the defendant in Ansaldi is that as an organic chemist, Ms. Sole knows that GBL is not an analogue of GHB; rather, Ms. Sole knows that the chemical structure of GBL is substantially different from that of GHB, as GBL is a ring and GHB is a straight chain. See attached letter of Dr. J. Thomas Ippoliti. Additionally, Ms. Sole's use of GBL as a chemical solvent during the course of her employment was a legitimate usage of GBL, not an attempt to circumvent the fact that GHB is a Schedule I Controlled Substance whose distribution is illegal. The statute therefore did not put Ms. Sole on notice that her conduct was prohibited.

    2.    The Analogue Statute lends itself to arbitrary enforcement

As set forth above, the second part of the inquiry into whether or not a statute is void for vagueness requires determining whether the statute lends itself to arbitrary enforcement. See United States v. Washam, 312 F.3d at 931 (citing Kolender v. Lawson, 461 U.S. at 358). In enacting criminal statutes, Congress is required to provide minimal requirements to "guide law enforcement in order to prevent police officers, prosecutors, and juries from pursuing their 'personal predilections.'" Washam, 312 F.3d at 931.

When evaluating the specific facts of the present case, it is clear that the Analogue Act lends itself to arbitrary enforcement with regard to GBL. The defendants in both United States v. Fisher, 289 F.3d 1329, and United States v. Ansaldi, 372 F.3d 118, were selling "Verve" – a "nutritional supplement" containing GBL. Defendants in both cases appear to have known that they could not sell products containing GHB; therefore, they switched to products containing GBL with the

13

knowledge that it metabolizes into GHB[8]. In the present case, however, Ms. Sole used GBL in the context of her employment as an organic chemist. Further, the facts of Ms. Sole's case demonstrate that Congress did not provide minimal requirements to prevent law enforcement officers from pursuing their own "personal predilections." Rather, given the fact that Ms. Sole is a chemist with access to substances like BD and GBL, she became a particularly easy target when a known drug dealer provided her name to the authorities. The Analogue Act is unconstitutionally vague as applied to GBL given the facts of this case.

### III. CONCLUSION

Defendant respectfully requests that the Court dismiss Counts Three through Eleven of the Indictment against her.

Respectfully submitted,
**NURIA SOLE,**
By her attorneys,

/s Christie M. Charles

George F. Gormley (BBO# 204140)
Christie M. Charles (BBO# 646995)
*George F. Gormley, P.C.*
655 Summer Street
Boston, MA 02210
(617) 478-2750

**Dated:**        May 18, 2005

---

[8] There is some belief that GHB assists the release of growth hormones which in turn stimulate muscle growth. See Fisher, 298 F.3d at 1332.